**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) C.A. No. _____ ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| ARMADA NUTRITION LLC and PRINOVA GROUP LLC, | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff, Natural Alternatives International, Inc. ("NAI"), hereby brings this complaint against defendants, Armada Nutrition LLC ("Armada") and Prinova Group LLC ("Prinova") (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1. NAI sells two well-known, branded ingredients, CarnoSyn® beta-alanine and SR CarnoSyn® beta-alanine ("CarnoSyn® Brands") in the United States and in other countries. CarnoSyn® Brands are promoted and used in many sports nutrition products, which are sold to consumers through several sales channels including (i) individual nutrition brand company websites, (ii) retail nutrition stores such as GNC and Vitamin Shoppe, (iii) large retail chains such as Walmart, Walgreens, CVS and Costco, and (iv) online only retail sites such as Amazon and Bodybuilding.com.  CarnoSyn® Brands are also sold to consumers as stand-alone, single-ingredient products.  CarnoSyn® Brands are covered by a robust portfolio of trademark, copyright and patent rights.

2. Defendants manufacture, supply, formulate and package dietary supplement ingredients containing beta-alanine for national and multi-national companies.  They also

advertise and promote, certain dietary supplement ingredients and formulations, including a new ingredient branded as "CarnoPrime", which is formulated in combination with beta-alanine. CarnoPrime is marketed and sold solely to purportedly reduce the side-effect called paresthesia, a harmless, tingling sensation experienced by many consumers who take products containing beta-alanine. Defendants have engaged in acts of unfair competition and interfered with NAI's CarnoSyn® Brands' business. NAI files this action to stop Defendants from intentionally and willfully infringing upon NAI's intellectual property rights and wrongfully interfering with NAI's CarnoSyn® Brands' business and goodwill.

## PARTIES

3.  NAI is a Delaware corporation with its principal place of business in Carlsbad, California.

4.  Armada is a Delaware limited liability company with its principal place of business in Springhill, Tennessee.

5.  Prinova is a Delaware limited liability company with its principal place of business in Carol Stream, Illinois.

## JURISDICTION AND VENUE

6.  This is an action under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531, *et seq.*, specifically 6 Del. C. § 2532, and the common law.

7.  Exclusive subject matter jurisdiction over this action is conferred upon the Court pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121(a), and supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. § 1367.

8. The exercise of personal jurisdiction over Defendants in Delaware is proper because Defendants are Delaware limited liability companies.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants were formed in this District and Defendants are subject to personal jurisdiction in this District with respect to this action.

## FACTS

**A. NAI**

10. NAI, a publicly-traded company, is a leading formulator, manufacturer, marketer and supplier of dietary supplements and provides strategic partnering services to its customers. NAI offers a wide range of innovative nutritional products and services to its clients including: scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and evaluation, marketing management and support, packaging and delivery system design, regulatory review and international product registration assistance. NAI funds, sponsors, directs and participates in research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives.

11. NAI provides private-label contract manufacturing services to companies that market and distribute vitamins, minerals, herbal and other nutritional supplements, as well as other health care products, to consumers both within and outside the United States.

12. NAI owns a patent estate related to the ingredient known as beta-alanine, which is primarily commercialized through the direct sale of this raw material and supply agreements with third parties for the manufacture, distribution and use of this raw material under NAI's CarnoSyn®, CarnoSyn Beta Alanine®, and SR CarnoSyn® trademarks. In numerous scientific studies, CarnoSyn® Brands, when used as a dietary supplement, have been proven to delay the

onset of fatigue in muscle cells, and have been shown to improve athletic performance. One of the inventors of the patents assigned to NAI, Dr. Roger Harris, has been widely-recognized for his significant scientific contribution in the field of nutritional supplements, including his work in several studies using CarnoSyn® Brands. Dr. Harris was the first and only recipient of the Lifetime Achievement Award conferred to him by the International Society of Sports Nutrition. On June 5, 2019, NAI announced that its CarnoSyn® beta-alanine had won *NutraIngredients*' prestigious 2019 Sports Nutrition Ingredient of the Year award, recognizing CarnoSyn® beta-alanine's major contributions to the sports nutrition industry.

13. NAI sells its CarnoSyn® Brands to customers in the United States engaged in interstate and foreign commerce. In addition to the "instant release" form of CarnoSyn® beta-alanine, NAI sells a "sustained release" form of beta-alanine, branded as SR CarnoSyn®. The sustained release ingredient stays in the body longer for extended absorption, higher muscle retention, and a significant increase in muscle carnosine levels to extend endurance, speed muscle recovery, build muscle strength, and enhance peak performance capabilities. Before the invention of SR CarnoSyn®, multiple small doses of beta-alanine were needed to be taken several times throughout the day to avoid the effect of paresthesia (*e.g.*, tingling sensations) in the body. SR CarnoSyn® was uniquely formulated to deliver beta-alanine more comfortably in higher doses, with reduced to no paresthesia. When taken correctly, this higher daily dose results in faster and greater increases in muscle carnosine synthesis, significantly reducing the loading period needed to enhance performance levels.

14. NAI also acts as a contract manufacturer for popular brands that use CarnoSyn® Brands in the form of powder and tablets.

15. NAI owns the entire right, title and interest to a family of trademarks consisting in whole or substantial part of "CarnoSyn®" (hereafter "CarnoSyn® Marks"), or variants thereof.

16. NAI owns the entire right, title and interest to U.S. Registration No. 5380219 for the CarnoSyn® trademark for "Vitamins and nutritional supplements; dietary supplements in the form of nutritional bars and nutritional drinks; dietary supplements containing fruit extracts; vitamins and nutritional supplements designed to increase endurance, working capacity of muscles and muscle mass" in International Class 5.  A true and complete copy of the Certificate of Registration is attached hereto as Exhibit 1 and incorporated herein by reference.

17. NAI has been using the CarnoSyn® trademark substantially, continuously, and extensively in U.S. commerce since at least May 28, 2004.

18. NAI owns the entire right, title and interest to U.S. Registration No. 4271217 for the CarnoSyn Beta Alanine® trademark, for "Vitamins and nutritional supplements; dietary supplements in the form of nutritional bars and nutritional drinks; dietary supplements containing fruit extracts; vitamins and nutritional supplements designed to increase endurance, working capacity of muscles and muscle mass" in International Class 5.  A true and complete copy of the Certificate of Registration is attached hereto as Exhibit 2 and incorporated herein by reference.

19. NAI filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 for the CarnoSyn Beta Alanine® trademark on January 8, 2019, for which the United States Patent and Trademark Office (USPTO) issued a Notice of Acceptance and Acknowledgement on February 6, 2019.

20. NAI owns the entire right, title and interest to U.S. Registration No. 4147282 for the SR CarnoSyn® trademark, for "vitamins and nutritional supplements; dietary supplements in the form of nutritional bars and nutritional drinks; dietary supplements containing fruit extracts;

vitamins and nutritional supplements designed to increase endurance, working capacity of muscles and muscle mass" in International Class 5.  A true and complete copy of the Certificate of Registration is attached hereto as Exhibit 3 and incorporated herein by reference.

21. NAI filed a Combined Declaration of Use and Incontestability under Sections 8 and 15 for the SR CarnoSyn® trademark on May 22, 2018, for which the USPTO issued a Notice of Acceptance and Acknowledgement on June 5, 2018.

22. NAI also has common law rights to comparable trademarks.

23. NAI maintains a website to promote and encourage sales of its branded beta-alanine at www.carnosyn.com and www.srcarnosyn.com, and subdomains www.loading.carnosyn.com, www.choose.carnosyn.com, www.beta-alanine.carnosyn.com, www.team.carnosyn.com, and www.today.carnosyn.com, the contents of which are incorporated by reference.

24. NAI has invested and continues to expend substantial funds to conduct scientific research and to build, expand and promote sales of its CarnoSyn® Brands.  NAI pursues legal avenues to protect its CarnoSyn® Brands and intellectual property portfolios.

25. In February 2019, NAI received New Dietary Ingredient (NDI) status from the Food and Drug Administration (FDA) for its CarnoSyn® beta-alanine ingredient at a total daily intake level of 6.4 grams per day.  NAI received the FDA's Acknowledgement Without Objection, or AKL letter, within the statutory 75-day evaluation period to respond.  CarnoSyn® is the only source of beta-alanine that has successfully obtained NDI status with the FDA under the Federal Food, Drug and Cosmetics Act (FDCA).  The NDI Notification (assigned number 1103 by the FDA) expressly references NAI's genuine and trademarked CarnoSyn® beta-alanine.

26. NAI sells CarnoSyn® Brands to dietary supplement brands or contract manufacturers in interstate and foreign commerce. Those customers receive a scientifically-tested recognized product, a limited license to NAI's trademarks and patents, NDI compliance status for CarnoSyn® beta-alanine under the FDCA, and indemnification against product liability. The license extends only to the CarnoSyn® Brands purchased from NAI, and does not extend to CarnoSyn® Brands that contain or are mixed or comingled with any other non-CarnoSyn® Brands. The parties to a CarnoSyn® Brands license agreement receive certain rights and undertake certain obligations to each other.

### B. DEFENDANTS' CONDUCT

27. Armada is an importer, supplier and contract manufacturer for dietary ingredients. It formulates, manufactures, and packages multi-ingredient powder products for customers. Armada's website claims that: "As a leading contract manufacturer focusing on high quality nutritional powders, Armada Nutrition has a lot more to offer than just manufacturing services. We specialize in formulating, processing and packaging custom, multi-ingredient powder solutions for national and global nutrition brands." *See* http://www.armadanutrition.com (last visited Aug. 2, 2019), which is incorporated by reference.

28. Prinova is a distributor of dietary ingredients. It claims to be "one of the world's largest distributors of functional ingredients and a provider of integrated solutions such as nutrient premixes and particle management services for leading food, beverage and wellness brands." *See* http://www.prinovausa.com/about-prinova (last visited Aug. 2, 2019), which is incorporated by reference.

29. The Defendants are under common ownership and control. Public records show that Armada and Prinova had the same address. Exhibits 5-6.

30. Defendants are manufacturing, supplying, distributing, offering for sale, promoting, or marketing a product named CarnoPrime, an ingredient formulated and marketed for the sole purpose to be ingested with beta-alanine.  Exhibits 4, 7-9.

31. Armada publicized in February 2019 that CarnoPrime is a "[h]uge innovation for the sports nutrition space coming soon from Armada!" and in May 2019, that CarnoPrime will be "[b]rought exclusively through Armada Nutrition".  Exhibits 4, 7.

32. Defendants are marketing and promoting the benefit of using CarnoPrime in conjunction with beta-alanine to reduce or eliminate the paresthesia side effect of taking beta-alanine. Exhibits 4, 7, 8.

33. Armada represents to the public that CarnoPrime "offsets the effects of paresthesia from beta-alanine for increased athletic performance", includes "up to 6.4 g beta-alanine per serving", provides "little to no paresthesia [sic]", and a consumer needs "23 servings for full beta-load".  Exhibit 4.

34. Prinova maintains a dedicated website to advertise and promote the product at https://www.carnoprimeusa.com/ (last visited Aug. 2, 2019).  Exhibit 8.  That domain name is registered to Prinova.  Exhibit 10.  Prinova represents that "CarnoPrime™" "Augments beta alanine - reducing or removing tingles.  The industry changing additive every pre workout needs."  The website further claims that CarnoPrime™ is "Launching Soon."  Exhibit 8.

35. Prinova maintains a YouTube channel to promote its business and products.  On or about July 23, 2019, Prinova posted a professionally-produced video to promote CarnoPrime as a "trademarked ingredient offered exclusively through Prinova LLC that decreases the unwanted effects of paresthesia."  *See* https://www.youtube.com/watch?v=B7K2qAj-xlI (last

8

visited Aug. 2, 2019), incorporated by reference.  The video discusses loading with 6.4 grams of beta-alanine with CarnoPrime.

36. The CarnoPrime product is intended to and does compete with NAI's CarnoSyn® Brands by allowing consumers to take higher doses of beta-alanine (up to 6.4 grams) and experiencing reduced to no paresthesia.

37. Defendants are manufacturing, supplying, distributing, and offering for sale the CarnoPrime product to be used with beta-alanine.  CarnoPrime was first launched in a widely-promoted, limited edition product called Ghost Legend® x Christian Guzman V.3 ("V.3 product").  Ghost LLC ("Ghost"), a Nevada company, advertised and promoted the V.3 product.  Exhibit 11.  The advertising represents that the product has a "GHOST® Full Disclosure Label" and that it contains, among other things, "6.4G Beta Alanine w/ CarnoPrime™."  *Id*.  It further states that:

> **GHOST® Full Disclosure Label**: All GHOST® products feature a 100% transparent label that fully discloses the dose of each active ingredient. Zero proprietary blends means you know what you're getting in each and every scoop.
>
> **Beta Alanine 6.4G**:   1.6, 2.4, 3.2, 4, 6.4—Beta-Alanine has been studied at a lot of daily doses. Generally research shows that you need to reach a saturation point to get the best effect from Beta-Alanine, and the max clinical I've seen so far (6.4g) gets you there the quickest. This has always been dosed in divided doses because of the discomfort of the tingles, but we're debuting Carnoprime as a tool to reduce the tingles to where you feel the dose, but the sensation isn't uncomfortable.
>
> **CarnoPrime™**: Beta-Alanine tingles aren't for everyone... especially 6.4 grams worth. We are pumped to exclusively introduce to the market CarnoPrime™, a patent pending compliment to Beta Alanine that reduces the amount of tingles users feel allowing you to stay comfy while reaping max benefits.

*Id*.

38. Ghost's website also advertises and promotes the V.3 product with a supplement facts panel:



39. The supplement fact panel states that the product includes "Tingle-Reduced Beta-Alanine", the formulation of which combines beta-alanine (6400 mg) with CarnoPrime™ (1280 mg). The label further states that CarnoPrime™ is a trademark of Prinova and identifies U.S. Patent No. 10,130,715 ("the '715 patent").

40. The label marks the V.3 product with the '715 patent, entitled "Methods Of Improving Tolerability, Pharmacodynamics, And Efficacy Of β–Alanine And Use Therefor", issued November 20, 2018. The two named inventors are Hector L. Lopez ("Lopez") and Timothy N. Ziegenfuss. Exhibit 15. The '715 patent discloses and incorporates a patent owned by NAI. The specification states: "In a particular example, a composition or formulation of the present invention can be formulated for sustained release of β–alanine, as described in U.S. Patent Application Publication No. 2009/0220575, incorporated herein by reference in its

10

entirety." The referenced patent application is assigned to NAI, and was issued as U.S. Patent No. 8,329,207 ("NAI '207 patent") on December 11, 2012. Exhibit 16. NAI's '207 patent, entitled "Compositions And Methods For The Sustained Release Of Beta-Alanine", was listed on NAI's website at http://www.carnosyn.com/patents at least as early as 2013, along with many other NAI patents linked to the CarnoSyn® Marks owned by NAI as part of the beta-alanine products. The CarnoSyn® Marks associated with the NAI '207 patent, and other NAI patents, are well-known, respected and recognized trademarks within the exercise and dietary supplement industry for beta-alanine-based products.

41. Lopez, one of the named inventors on the '715 patent, expressly connected CarnoSyn beta-alanine and CarnoPrime in an August 2018 podcast interview for Ben Greenfield Fitness, He specifically referred to CarnoSyn beta-alanine and said that CarnoPrime was designed to put a "nutraceutical blanket" on a receptor in the body to allow consumers to use higher doses of beta-alanine with reduced paresthesia.

42. It was recently announced that Prinova is sponsoring and promoting a presentation by Hector Lopez entitled "CarnoPrime: Unleashing the Power of Beta-Alanine – sponsored by Prinova" at an industry trade show in Las Vegas, Nevada. Exhibit 12. NAI is attending the same show and is giving presentations on its CarnoSyn® Brands.

43. Defendants' product bearing the "CarnoPrime" name, marketed to be used with beta-alanine, is highly similar to the goods provided by NAI using the CarnoSyn® Marks, and are marketed to the same or similar consumers through similar channels or trade. In fact, based on Defendant's marketing claims, CarnoPrime has no usefulness or value unless it is coupled with beta-alanine in a dietary supplement.

44. Defendants' use of the highly similar CarnoPrime name creates the false and deceptive commercial impression that NAI supplies or is affiliated with Defendants' goods and has caused and will continue to cause confusion, mistake, or deception as to the source, sponsorship, and affiliation of Defendants' goods.

45. Consumers have believed and are likely to continue to believe that NAI is supplying, sponsoring, approving, endorsing, or affiliated with Defendants or CarnoPrime, thereby resulting in economic injury to NAI, including loss of actual and potential sales, and damage to NAI, its CarnoSyn® Marks, reputation, and associated goodwill.

46. Consumers have already confused NAI's products associated with the CarnoSyn® Marks with CarnoPrime, referring to CarnoPrime as a "low tingle version of beta alanine!!" Exhibit 13; *see also* Exhibit 17.

47. Defendants' first use of the CarnoPrime name was after the date that NAI first used its trademarks in commerce.

48. Armada, as the manufacturer for Ghost's products, had knowledge of and was aware of NAI's CarnoSyn® Marks, as shown by the use of the CarnoSyn® Marks on packaging for Ghost products.  Exhibit 14.

49. Defendants' use of the confusing name CarnoPrime has harmed and continues to harm NAI's CarnoSyn® Marks and otherwise has damaged NAI. Defendants' actions demonstrate intentional, willful, and bad faith conduct to harm NAI.

50. As a result of Defendants' conduct, NAI has suffered, and will continue to suffer, actual damages, as well as dilution of the distinctive quality of its trademarks.

## COUNT I

### (Federal Trademark Infringement in Violation of 15 U.S.C. § 1114(1)(a))

51. The foregoing allegations are incorporated by reference.

52. Defendants' products are used, offered for sale, and sold in interstate and foreign commerce.

53. Defendants' use of the CarnoPrime name – which is nearly identical to the CarnoSyn® Marks – in manufacturing, supplying, distributing, offering for sale, promoting, or marketing their products, has caused and will continue to cause confusion, mistake, or deception as to the source of origin, affiliation, sponsorship, or authenticity of Defendants' goods. As a result of Defendants' use of the CarnoPrime mark that is confusingly similar to NAI's federally registered CarnoSyn® marks for beta-alanine as a dietary ingredient, the public is likely to believe that NAI is affiliated with Defendants or even more harmful, that CarnoPrime is another form of CarnoSyn® Brands.

54. Defendants' acts are in violation of 15 U.S.C. § 1114(a).

55. Defendants' infringement is willful.

56. The goodwill of NAI's business under the CarnoSyn® Marks is of significant value, and NAI has suffered and will continue to suffer harm and injury to its trade reputation and goodwill should infringement be allowed to continue.

57. As a result of the infringement by Defendants, NAI has suffered and continues to suffer damages in an amount to be proved at trial.

## COUNT II

### (Violation of Section 43(a) Lanham Act, 15 U.S.C. § 1125(a))

58. The foregoing allegations are incorporated by reference.

59. The CarnoSyn® Marks have become uniquely associated with and hence identify NAI. Defendants' interstate use of the nearly identical name CarnoPrime in connection with similar products as NAI's CarnoSyn® Brands constitutes a false designation of origin or false and misleading representation of fact, which is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Defendants with NAI's CarnoSyn® Marks, or as to the origin, sponsorship, or approval of Defendants' commercial activities by NAI.

60. Defendant's acts are in violation of 5 U.S.C. § 1125(a).

61. As a result of Defendants' acts, Plaintiff has suffered, and is suffering, damages in an amount to be proved at trial.

## COUNT III

### (Trademark Dilution Under 15 U.S.C. § 1125(c))

62. The foregoing allegations are incorporated by reference.

63. The CarnoSyn® Marks are registered and have become famous and distinctive in the United States through its extensive, continuous and exclusive use in connection with CarnoSyn® Brands. The CarnoSyn® Marks were famous prior to any use of the CarnoPrime name by Defendants.

64. Despite knowledge of the CarnoSyn® Marks, Defendants used and continue to use in interstate commerce colorable imitations thereof in connection with the advertisement, promotion, and sale of Defendants' products and services.

65. Defendants' actions have caused and continue to cause injury to, and a likelihood of dilution of, the distinctive quality of the CarnoSyn® Marks in violation of NAI's rights under 15 U.S.C. § 1125(c). Defendants' wrongful use of the CarnoSyn® Marks is likely to dilute the distinctive nature of the CarnoSyn® Marks by blurring and tarnishing NAI's reputation.

66. Defendants have used and continue to use in interstate commerce colorable imitations of the CarnoSyn® Marks willfully and with the intent to dilute the distinctive quality of the CarnoSyn® Marks and trade on the reputation and good will of NAI's CarnoSyn® Marks. Accordingly, NAI is entitled to damages under 15 U.S.C. § 1117(a).

67. As a direct and proximate result of Defendants' conduct, NAI has suffered and continues to suffer harm to the CarnoSyn® Marks, and other damages in an amount to be proved at trial.

## COUNT IV

### (Trademark Dilution Under 6 Del. C. § 3313)

68. The foregoing allegations are incorporated by reference.

69. Defendants' use of the CarnoSyn® Marks constitutes a dilution of the CarnoSyn® Marks and injures NAI's business reputation in violation of 6 Del. C. § 3301, *et seq.* (the "Delaware Trademark Act"), specifically § 3313.

70. As a direct and proximate result of Defendants' conduct, NAI has suffered and continues to suffer damages in an amount to be proved at trial.

## COUNT V

### (Unfair Competition Under 6 Del. C. § 2532)

71. The foregoing allegations are incorporated by reference.

72. By their acts, as described herein, Defendants have engaged in deceptive trade practices in violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532, *inter alia*, because in the course of business, they have caused, and continue to cause, likelihood of confusion or of misunderstanding as to (a) the source, sponsorship, approval, or certification of

Defendants' goods by NAI; or (b) affiliation, connection, or association of Defendants' goods by NAI.

73. As a direct and proximate result of Defendants' conduct, NAI has suffered and continues to suffer damages in an amount to be proved at trial.

## COUNT VI

**(Delaware Common Law Trademark Infringement and Unfair Competition)**

74. The foregoing allegations are incorporated by reference.

75. Defendants' use of the CarnoPrime name constitutes infringement of NAI's common law trademark rights in the CarnoSyn® Marks. Defendants continue to infringe NAI's common law trademark rights and to commit acts of unfair competition, resulting in confusion and deception of the public and harm to NAI's CarnoSyn® Marks.

76. As a direct and proximate result of Defendants' conduct, NAI has suffered and continues to suffer damages in an amount to be proved at trial.

## REQUEST FOR RELIEF

NAI respectfully requests that this Court enter judgment against Defendants and that the following relief be granted:

a. judgment that NAI's CarnoSyn® Marks have been infringed by Defendants in violation of NAI's rights under common law, 15 U.S.C. § 1114, and Delaware law;

b. judgment that Defendants engaged in unfair competition in violation of NAI's rights under common law, 15 U.S.C. § 1125(a), and Delaware law;

c. judgment that Defendants' activities are likely to dilute NAI's CarnoSyn® Marks in violation of NAI's rights under 15 U.S.C. § 1125(c) and Delaware law;

d. award actual damages, including statutory damages;

  e.  award any all profits derived by Defendants' violation of NAI's rights;

  f.  grant a preliminary and permanent injunction against continued violations of the Lanham Act and Delaware law;

  g.  punitive and enhanced damages as allowed by law;

  h.  attorneys' fees as allowed by law;

  i.  costs pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

  j.  such other relief as the Court deems just and appropriate under the circumstances.

## JURY DEMAND

NAI hereby demands a jury trial on all issues so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Kevin M. Bell
Richard J. Oparil
Scott A.M. Chambers, Ph.D.
Caroline Cook Maxwell
PORZIO, BROMBERG & NEWMAN PC
1200 New Hampshire Ave. NW, Suite 710
Washington, DC 20036
Tel: (202) 517-1888

Dated: August 5, 2019
6333519 / 49382

By: */s/ David E. Moore*
 David E. Moore (#3983)
 Bindu A. Palapura (#5370)
 Tracey E. Timlin (#6469)
 Hercules Plaza, 6th Floor
 1313 N. Market Street
 Wilmington, DE 19801
 Tel: (302) 984-6000
 dmoore@potteranderson.com
 bpalapura@potteranderson.com
 ttimlin@potteranderson.com

*Attorneys for Plaintiff Natural Alternatives International, Inc.*